THE PEOPLE, for use of Macon County,

*v.*

EDMISTON McCLELLAN *et al.*

*Filed at Springfield March 30, 1891.*

1. COSTS AND FEES—*act of May 18, 1881, construed.* The act of May 18, 1881, in force July 1, 1881, requiring clerks of courts of record, and sheriffs, at the end of their terms of office, to pay all costs and fees collected and remaining in their hands to the county treasurer, has reference solely to such costs and fees as might come into their hands after the act went into effect.

2. CONSTRUCTION OF STATUTES—*whether retroactive in their operation.* As a general rule, no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights, etc., unless such intention is clearly expressed; and the courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation.

3. PLEADING—*plea assuming to answer two counts answering one—each breach a count.* The rule is well settled that a plea which assumes to answer two or more counts of a declaration but answers only one, is bad on demurrer. In actions on official bonds each breach assigned is treated as a distinct count.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macon county; the Hon. E. P. VAIL, Judge, presiding.

This was an action on the official bond of Edmiston McClellan, clerk of the circuit court of Macon county. It is averred in the declaration that McClellan was elected, and qualified, as clerk, with the other defendants as sureties on his bond, for the term of four years, commencing on the first Monday in December, 1880; that the bond was conditioned that said "McClellan shall faithfully perform all the duties of his said office, and pay over all moneys that come to his hands by virtue of his said office to the parties entitled thereto, and deliver up all moneys, papers, books, records and other things

appertaining to his said office, whole, safe and undefaced, when lawfully required to do so;" that said bond was duly approved, and became the official bond of said clerk; that said McClellan took upon himself the duties of his said office, but did not faithfully perform the duties required of him as such clerk, according to law, and pay over all moneys that came to his hands by virtue of his office; that it was the duty of said clerk to make to the chairman of the board of supervisors of said county, on the first days of each June and December during said term, a return in writing, setting forth the total amounts of the fees and emoluments of his said office, of every name and character, which had been received by him during the half year ending at the time of such report, and that divers fees and emoluments were paid to and received by said clerk during said term, to the amount of $150, which it became and was his duty to so report to the said chairman; that he neglected and refused to make such return, and retained and converted to his own use such fees and emoluments, to the damage to plaintiff, etc.; that it became and was the duty of said McClellan, as such clerk, at the expiration of said term of office, to pay to the treasurer of said county all costs and fees collected and remaining in his hands at the expiration of his term of office; that said term of office has long since expired, and said McClellan, as such clerk, had, at the expiration of said term of office, a large amount of costs and fees collected and remaining in his hands, to the amount of $1500, which it was his duty to pay over to the treasurer of said Macon county; that he neglected and refused to pay said moneys to the said treasurer, and retained the same, and converted the same to his own use, to the damage of plaintiff of $1500, by means of the premises, etc.

To the declaration the defendants interposed three pleas— Nos. 4, 5 and 6.

*Fourth plea.*—"Defendants say *actio non* as to the second breach in the declaration, because they say that as to $1000

of the costs and fees alleged to have been collected by said McClellan, they are fees of witnesses, who had become entitled to the same under the laws of the State of Illinois prior to the first Monday of December, 1880, and had been collected by clerks of the circuit court of said county prior to the making of the said supposed writing obligatory, and before it became of binding force and effect." It concludes with offer to verify, and prayer for judgment.

*Fifth plea.*—"Defendants say *actio non,* because, they say, the defendant, Edmiston McClellan, has for many successive terms of that office been elected to, inducted in and performed the duties of clerk of the circuit court of the county of Macon, to-wit, for the following named terms: From the first Monday of December, 1868, a term of four years; from the first Monday in December, 1872, a term of four years; from the first Monday in December, 1876, a term of four years; and from the first Monday in December, 1880, for a term of four years,—in which last mentioned term the defendants gave the bond upon which suit is brought in this case; that of the money sought to be recovered in this cause, $360 was money which came into his hands during the first mentioned of said terms, belonging to various persons who had testified as witnesses in the circuit court of Macon county at times prior to the first Monday in December, 1872,—witness fees collected during said first term of office by the said defendant, Edmiston McClellan, which he has always been and still is ready to pay to the persons entitled; and the sum of $500 was money that came into his hands as clerk during the second of said terms, belonging in like manner to various persons, as witness fees earned prior to the first Monday in December, 1876, and that said McClellan has always been and still is ready to pay the same to parties entitled thereto; and $200 was money which came into the hands of said clerk during the third of said terms, belonging, as witness fees, to persons who had, prior to the first Monday of December, 1880, testified in the circuit

court of Macon county." It concludes with offer to verify, and prayer for judgment.

*Sixth plea.*—"Defendants say *actio non* as to the second breach, because all the money sought to be recovered by said breach consists of witness fees in the circuit court of Macon county, which came to the hands of said McClellan prior to the seventh day of December, 1880, while the defendant was acting as and performing the duties of clerk of said court in previous terms of said office." It concludes with offer to verify, and prayer for judgment.

The plaintiff filed a general demurrer to the fourth, fifth and sixth pleas, and each of them. The court overruled the demurrer, and plaintiff electing to abide by the demurrer, judgment was rendered in favor of defendants.

Mr. W. C. OUTEN, for the appellants:

The principal question is, whether, under the bond by McClellan for his term as clerk, commencing in December, 1880, there is a liability for fees collected by him as such clerk during previous terms, and remaining in his hands when the bond sued on was executed. The law of 1881 makes it the duty of such clerk, at the expiration of his term of office, to pay to the county treasurer "all costs and fees collected and remaining in his hands," etc. It does not distinguish between fees and costs collected by him and those received by him from his predecessor, or held by him at the time as successor of himself.

There is no claim on the part of the defense that these fees and costs were not in the hands of the clerk when he entered upon the term for which the bond sued on was given, but they are, by the pleas, admitted to have been in his hands at that time. If they were, then a liability arises on the bond sued on, as there is no default in duty during the prior terms. *Kagay* v. *Trustees*, 68 Ill. 75; *Pinkstaff* v. *People*, 59 id. 148; *Morley* v. *Town of Metamora*, 78 id. 394; *Roper* v. *Trustees*, 91 id. 518; *Bruce* v. *United States*, 17 How. 596.

None of the pleas in question answers the charge of the first breach in the declaration. The fourth and sixth pleas are by their express terms confined to the second breach. The fifth plea is not in express terms so confined, but its averments can have no relation to any but the second breach. They make no pretense of an answer to the charge made in the first breach. As the fifth plea, however, is not expressly directed to the second breach, it may be held to be intended as an answer to the whole declaration. If so, it is obnoxious to demurrer, and the demurrer should have been sustained as to it. *People* v. *McCormack,* 68 Ill. 226.

If it should be held that the fifth plea was only directed to the second breach, then there was no plea of any kind to the first breach, and plaintiff was entitled to judgment thereon, and it was error for the court to enter judgment against the plaintiff for costs.

Messrs. Crea & Ewing, Messrs. Johns & Randolph, and Mr. I. A. Buckingham, for the appellees:

Before the passage of the act of 1881 the clerk of a circuit court was the sole custodian of the fees of witnesses after reaching his hands. A refusal by him to pay a witness his fees would have made him liable to a suit on his bond. But we urge that in the absence of any law providing for the taking out of the hands of the clerk of witness' fees, except by payment to witnesses or their assignees, the clerk became bound to hold the same as against all others.

Witnesses had full right to bring suit, if suit should become necessary, against the clerk and his sureties, at any time, within the statute of limitations applicable to suits on official bonds. No law of the State existed under which the earnings of witnesses could be wrested from them to become the property of any other person or of the county.

The act was not intended to have a retrospective operation. We quote from Potter's Dwarris on Statutes, page 162: "The

American authorities are quite uniform on the retroactive effect of statutes. The general rule is, that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, right of action or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation. And although the words of the statute are broad enough, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein."

The fifth section of the act of 1881 provides, that unless witnesses shall claim their fees within five years next after such fees shall have reached the county treasurer's hands, the right to claim such fees shall be terminated—that is to say, the witness' money shall be confiscated. No such law was in force before 1881. The right of witnesses to their fees for services rendered, and involved in the case at bar, accrued when no such confiscation law stared them in the face. Such a confiscation law formed no part of the contract under which they rendered the services for which their fees stand as equivalents.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It will be observed that the fourth and sixth pleas are interposed as an answer to the second breach of the declaration. They will first be considered.

McClellan was elected clerk of the circuit court of Macon county in the fall of 1880. He gave bond as required by law, and entered upon the discharge of his duties on the first Monday of December of that year, and the question raised by the

demurrer to the pleas is, whether he was required to pay over witness fees which came into his hands prior to the first Monday of December, 1880, while he held the office under prior elections.

On the 28th day of May, 1881, the legislature passed an act which went into force on the first day of July of that year. Section 1 of the act provides: "The clerk of any court of record or sheriff of any county of this State shall, at the expiration of his office, pay to the treasurer of the county in which his court is held, all costs and fees collected and remaining in his hands, together with a statement of names of persons and amount due to each: *Provided, however,* that nothing in this section shall apply to any costs and fees of such clerk and sheriff, and belonging to him." The act contains four other sections, but no one of the sections contains any provision manifesting an intention to give the act a retrospective operation.

It is not claimed that this action could have been maintained prior to the passage of the act of 1881, but reliance is placed on the first section of the act to sustain the action. Before the passage of the act the practice had been uniform in this State for the clerk of the circuit court to receive witness fees and hold them for the party interested until called upon for payment, and it has always been supposed that the clerk and his sureties were liable on the official bond of the clerk, for a failure to pay over fees to the proper party. The legislature had the right, no doubt, to change the practice which had grown up in such cases, and require the clerk to pay such fees into the county treasury; but such a statute could not have a retroactive effect, unless such an intention was plainly expressed in the act. In Potter's Dwarris on Statutes, (p. 162,) in a note, it is said: "The American authorities are quite uniform on the retroactive effect of statutes. The general rule is, that no statute, however positive in its terms, *is to be construed* as designed to interfere with existing contracts, right

of action or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation. And although the words of the statute are broad enough, in their literal extent, to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein." (See, also, *Thompson* v. *Alexander*, 11 Ill. 54; *People* v. *Thatcher*, 95 id. 109.) Here, as said before, the act contains no clause indicating an intent that it should control the action of the clerk in regard to costs collected by him before its passage.

We think it is plain that the words of the act requiring the clerk, upon the expiration of the term of his office, to pay the treasurer of the county all costs and fees collected and remaining in his hands, has reference solely to such costs and fees as might come into his hands after the act went into effect.

We now come to the fifth plea. This plea professes to answer both breaches in the declaration, but it contains nothing which can be regarded as an answer to the first breach. The rule is well settled that a plea which assumes to answer two or more counts of a declaration, but answers only one, is bad. (1 Chitty, 523; *Goodrich* v. *Reynolds*, 31 Ill. 495; *People* v. *McCormack*, 68 id. 230.) Here each breach is to be treated as a distinct count, and the plea was manifestly bad in failing to answer that which it assumed to answer.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded, with directions to the circuit court to sustain the demurrer to the fifth plea.

*Judgment reversed.*